IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Robin Weber and Bryan Weber,<br><br>        Plaintiffs,<br><br>vs.<br><br>Bank of America NA d/b/a BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing LP; and John Doe Trust,<br><br>        Defendants. | C/A No. 0:13-cv-01999-JFA<br><br><br>**ORDER ON**<br>**MOTION TO DISMISS** |

## I.    INTRODUCTION

This matter comes before the court on Defendant's Motion to Dismiss for failure to state a claim in this home loan modification dispute. ECF No. 6. Originally filed in the Court of Common Pleas for York County, Defendant Bank of America, NA[1] ("Defendant") removed this action to this court based on diversity jurisdiction and then filed this motion to dismiss. Defendant moves to dismiss each and every cause of action: (1) negligence and/or negligent misrepresentation; (2) unfair trade practices; and (3) detrimental reliance.[2]   Plaintiffs Robin Weber and Bryan Weber ("Plaintiffs") oppose the motion and argue that, Defendant repeatedly "ignored and rebuffed" Plaintiffs' attempts to obtain a loan modification. Plaintiffs argue that Defendant's actions violated an administrative order of South Carolina Supreme Court Chief

---

[1] Plaintiffs name an additional defendant—"John Doe Trust"—in their Complaint as the "unknown holder/owner of the Note and Mortgage." Plaintiffs further state "its proper name will be substituted when known." No such substitution has been made at this early stage of litigation. Accordingly, Defendant John Doe Trust has not made an appearance in this action. Except where otherwise noted, "Defendant" shall refer only to Defendant Bank of America, NA. Paragraph 38 of the Complaint alleges that "[t]he conduct of [Defendant] is imputed to John Doe Trust on the basis that Wells Fargo is an undisclosed principal of the trust that Wells Fargo operated pursuant to a Pooling and Servicing Agreement, or operated pursuant to direct communications from the Trust." Wells Fargo is not a party to this case and the court is unsure how the actions of Wells Fargo are at all relevant to the claims against Defendant.

[2] Defendant argues that this claim should be treated as promissory estoppel, not detrimental reliance.

Justice Jean Toal issued in May 2011, and perhaps violated other laws.  For the reasons stated below, this court grants Defendant's motion as to all causes of action.

## II.    FACTS

The following relevant facts from the Complaint are taken as true only for the purposes of this motion.  Plaintiffs executed a Note and Mortgage on their primary residence in favor of Allen Tate Mortgage Services, Inc. and mortgagee Mortgage Electronic Registration Systems, Inc. as nominee for Allen Tate on May 12, 2006.  Compl. ¶ 5.  Both the Note and Mortgage were sold or assigned to Defendant.[3]  *Id*. at ¶¶ 6-7.  "On or about [August 1, 2009], due to various unemployment issues, Plaintiffs requested foreclosure assistance from [Defendant]."  *Id*. at ¶ 9.  Defendant informed Plaintiffs that they could not receive assistance because Plaintiffs were unemployed.  *Id*. at ¶ 10.  However, after filing a foreclosure action on June 16, 2011, Defendant "informed Plaintiffs they were subject to foreclosure assistance."  *Id*. at ¶ 11.  "It is unknown the exact [Home Affordable Modification Program] for which Plaintiffs were eligible."  *Id*. at ¶ 21.

Even though Plaintiffs had "complied with all information disclosures and submissions of documents and information for the requested mortgage foreclosure relief … Plaintiffs received little to no acknowledgment of requested relief, and were referred to one or more representatives of [Defendant]."  *Id*. at ¶¶ 12, 13.  Defendant repeatedly "ignored and rebuffed" Plaintiffs' attempts to obtain a loan modification.  *Id*. at ¶ 22.  "Plaintiffs have attempted to pursue a loan modification to no avail" and "Plaintiffs are now faced with foreclosure."  *Id*. at ¶¶ 17, 23.

Additionally, the foreclosing firm "was aware of the lack of response by [Defendant, and] informed Plaintiffs that [Defendant] did not have processes in place for foreclosure intervention."  Compl. ¶ 15.  On or about May 17, 2012, the foreclosure action filed on June 16,

---

[3] Defendant states that it is the servicer of Plaintiffs' Loan.  *See* ECF No. 6, at 3.  Plaintiffs also dispute the "assignment or transfer… as being in compliance with the various statutes governing assignment or transfer of [n]otes" and mortgages.  *See* Compl. ¶¶ 6-7.

2011 was dismissed for failure to prosecute.  *Id*. at ¶ 16.  "On May 20, 2013 [the foreclosing

firm] filed a letter with the Court, after the foreclosure had been dismissed, of a denial of

foreclosure relief.  This is a sham statement."[4]  *Id*. at ¶ 18.  Plaintiffs further allege that "[s]imilar

suit(s) have been filed in the district courts of Massachusetts alleging [Defendant] willfully and

absent any consideration issued loan modification denials to debtors … [and] allege that loan

officers received a pecuniary benefit for denying loan mortgage modifications."  *Id*. at ¶ 20.

## III.     LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true

the facts alleged in the complaint and view them in the light most favorable to the plaintiff.

*Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).  The United States Supreme Court has

stated, however, that "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citing *Twombly*, 550 U.S. at 556).  Although "a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations," a pleading "will not do" if it

merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action."  *Twombly*, 550 U.S. at 555.  Likewise, "a complaint [will not] suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancements.'"  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557). Accordingly, Plaintiff must put forth claims that cross "the line from

conceivable to plausible."  *Id.* at 680 (internal quotation omitted).  The court "need not accept the

[plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted

---

[4] It is unclear from these two sentences what was filed or what statement is a sham.

inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citation omitted).

**IV.    DISCUSSION**

Defendant moves to dismiss all causes of action explicitly alleged by Plaintiffs: (1) negligence and/or negligent misrepresentation; (2) unfair trade practices; and (3) detrimental reliance.  Neither violation of the Toal Administrative Order, nor non-compliance with the Home Affordable Modification Program ("HAMP") or other similar program, are pled as causes of action—rather Plaintiffs seem to argue that violation of either the Toal Administrative Order, or non-compliance with HAMP or a similar program, forms the basis of the explicitly alleged causes of action.  After discussing both the Toal Administrative Order and HAMP or similar programs, each cause of action is discussed separately.

*A.  The Toal Administrative Order and HAMP*

In their Complaint, Plaintiffs argue that a "recently issued Order of the SC Supreme Court of May 2011 mandat[es] foreclosure assistance be provided all foreclosure defendants for owner occupied residences."  Compl. ¶ 11.  Despite claiming in their response brief to this motion that "[t]he gravamen of this suit lies in the duty imposed on Defendants pursuant to the Administrative Order issued by the SC Supreme Court in May 2011," Plaintiffs do not provide a citation to the Order in any filing.  *See* ECF No. 7; *See* Complaint.  The court is aware of at least six administrative orders issued by the South Carolina Supreme Court in May 2011 and cannot, therefore, be certain to which order Plaintiffs are referring.  However, the court will assume that Plaintiffs are referring to Chief Justice Toal's Administrative Order 2011-05-02-01 ("Toal Administrative Order")—the only South Carolina Supreme Court administrative order issued in May of 2011 that appears at all relevant to Plaintiffs' claims.

Plaintiffs' main argument seems to be not that Defendant failed to provide a loan modification in violation of either the Toal Administrative Order, or HAMP or a similar program, but that Defendant did not properly process Plaintiffs' requests for a loan modification, in violation of the Toal Administrative Order.   Under either scenario, the Toal Administrative Order cannot form the basis of Plaintiffs' claims because it provides "[t]he Court having jurisdiction over the foreclosure action shall hear and determine any dispute concerning any party's compliance with this order."  Toal Administrative Order p. 4.  Assuming that Plaintiffs are referring to the Toal Administrative Order, any petition based on the Toal Administrative Order, therefore, should have been made to the court adjudicating the foreclosure action.  The Toal Administrative Order, on its face, does not create a private cause of action.

Further, if Plaintiffs' argument is that the Toal Administrative Order "mandat[es] foreclosure assistance be provided all foreclosure defendants for owner occupied residences," Plaintiffs confuse the procedural nature of the Toal Administrative Order with a substantive requirement that lender-servicers must provide homeowners a loan modification, or some other form of relief.  Compl. ¶ 11.  The plain text of the Toal Administrative Order imposes no such requirement: it merely provides procedures intended to insure that a lender-servicer and mortgagor have the opportunity to pursue a loan modification or other loss mitigation "where possible."  Toal Administrative Order p. 1.  The Toal Administrative Order provides:

> in order to insure that eligible homeowners and lender-servicers have been afforded the benefits of loan modification or other loss mitigation *where possible*, and to insure that the procedures for handling issues relating to such efforts are handled uniformly throughout the State, so that mortgage foreclosure actions are not unnecessarily dismissed, delayed or inappropriately concluded while loan modification or other loss mitigation efforts are being pursued, it is ordered as follows:

Toal Administrative Order p. 1 (emphasis added).  The Toal Administrative Order then lays out various procedural requirements—intended to allow the parties to pursue a loan modification or other loss mitigation—to be followed in mortgage foreclosure actions related to owner-occupied dwellings.  The Toal Administrative Order simply does not "mandat[e] foreclosure assistance be provided all foreclosure defendants for owner occupied residences."  Compl. ¶ 11.

It may also be the case that Plaintiffs argue that the Toal Administrative Order reinforced a pre-existing obligation on Defendant to provide a loan modification or other loss mitigation remedy to Plaintiffs.  Plaintiffs' response brief to this motion provides:

> The gravamen of this suit lies in the duty imposed on these Defendants pursuant to the Administrative Order issued by the SC Supreme Court in May 2011, mandating that debtors such as Plaintiffs shall have the benefit of creditors' attempts at complying with one or more loan modification programs, be it the federal Home Affordable Modification Program ("HAMP" colloquially), loa[n] modifications mandated by Fannie Mae or Freddie or FHA or USDA, or internal loan modification programs.

*See* ECF No. 7, at p. 1.  Similarly, Plaintiffs admit in their Complaint that "[i]t is unknown the exact [loan modification] program for which Plaintiffs were eligible."  Compl. ¶ 21.  Perhaps in contradiction to the preceding arguments, Plaintiffs then argue "Plaintiffs do not allege that noncompliance with HAMP is the gravamen of the action, but rather noncompliance with the order of the SC Supreme Court."  *See* ECF No. 7, at p. 1.  Aside from the fact that the Toal Administrative Order does not require Defendant to provide Plaintiffs a loan modification—as discussed above—and could not[5] do so, the Toal Administrative Order unambiguously states that such HAMP programs are "only applicable to such loans if the lender or servicer has agreed to participate in the [HAMP]."  Toal Administrative Order p. 1.

---

[5] Even if the Toal Administrative Order did include such a mandate, the court is not aware of any authority providing that the Chief Justice, sitting alone, possesses the law-making authority of the entire South Carolina Supreme Court.  The Toal Administrative Order is exactly as its title suggests.  It does not, and cannot, create a private cause of action.

Plaintiffs have not alleged that Defendant agreed to participate in any type of loan modification program. Instead, Plaintiffs seem to allege that Defendant is required to provide some form of a loan modification program, although Plaintiffs do not know which loan modification program Defendant is required to provide. But, the "denial of a loan modification under HAMP [or other similar program] does not create a private cause of action." *Steffens v. Am. Home Mortgage Sevicing, Inc.*, CIV.A. 6:10-1788-JMC, 2011 WL 901812 (D.S.C. Jan. 5, 2011) report and recommendation adopted sub nom. *Steffens v. Am. Home Mortgage Servicing, Inc.*, 6:10-CV-01788-JMC, 2011 WL 901179 (D.S.C. Mar. 15, 2011) (citing *See, e.g., Dugger v. Bank of America,* No. 1:10CV00076, 2010 WL 3258383, at *2 (E.D.Mo. Aug. 16, 2010) (dismissing claims under Rule 12(b)(6) and stating that "neither EESA, TARP, nor HAMP provides a private right of action to individual borrowers"); *Zeller v. Aurora Loan Servs., LLC,* No. 310cv00044, 2010 WL 3219134, at *1 (W.D.Va. Aug.10, 2010) (stating that Congress did not permit a private cause of action under HAMP); *Marks v. Bank of Am., N.A.,* No. 03:10–cv–08039–PHX–JAT, 2010 2572988, at * *5–7 (D. Ariz. June 22, 2010) (holding that the HAMP Guidelines and EESA do not provide a private cause of action)). Accordingly, Defendant was not obligated to provide Plaintiffs a loan modification under either the Toal Administrative Order, or HAMP or a similar program.

*B.  Negligence*

Plaintiffs' claim for negligence fails because Plaintiffs have not established that Defendant breached a duty owed to Plaintiffs.[6] *Rogers v. S. Carolina Dep't of Parole & Cmty. Corr.*, 320 S.C. 253, 255, 464 S.E.2d 330, 332 (1995) ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff.

---

[6] Plaintiffs' claim for negligence may fail for other reasons as well, but the court will not address those reasons because the court finds the absence of a duty dispositive.

Without such a duty, there can be no actionable negligence."). A bank in South Carolina does not owe a special duty of care to its customers, unless perhaps certain circumstances establish that special duty. *Regions Bank v. Schmauch*, 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003) (Bank did not owe a special duty of care to customer who was not in a vulnerable position); *Id.* ("South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature."); *Citizens & S. Nat'l Bank of South Carolina v. Lanford,* 313 S.C. 540, 443 S.E.2d 549 (1994) ("The law does not impose a duty on the bank to explain to an individual what [she] could learn from simply reading the document"). No such circumstances necessary to establish a special duty of care exist here. The mere fact that Plaintiffs are no longer able to make payments—as they agreed to do—on their mortgage does not place a heightened duty on Defendant. Importantly, "[t]he Court having jurisdiction over the foreclosure action" is to enforce any duty imposed by the Toal Administrative Order, and any such duty is therefore not the basis for a heightened tort duty in a separate action. Toal Administrative Order p. 4.

Plaintiffs argue that Defendant's actions amount to negligence per se, because Defendant's failure to provide Plaintiffs a loan modification, or at least a meaningful process through which to petition Defendant for a loan modification, violates the Toal Administrative Order. In support of this argument, Plaintiffs baldly state that "[the Toal Administrative Order] is tantamount to a statutory duty, for which a violation of such duty would be negligence per se." *See* ECF No. 7, at p. 1. Plaintiffs offer no law in support of this proposition. Because Plaintiffs have not established that the Toal Administrative Order creates a private cause of action or that the violation of such an order would amount to negligence per se, the court finds that negligence per se is not applicable in this case.

Plaintiffs' claim for negligence, therefore, fails to state a claim upon which relief can be granted.

### C. *Negligent Misrepresentation*

Plaintiffs' claim for negligent misrepresentation fails because Plaintiffs have not sufficiently pled a false representation made by the Defendant to Plaintiffs.  To state a claim for negligent misrepresentation, the plaintiff must allege: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.  *Kelly v. S. Carolina Farm Bureau Mut. Ins. Co.*, 316 S.C. 319, 323-24, 450 S.E.2d 59, 62 (Ct. App. 1994).  The only allegation in the complaint that points to falsity is paragraph 18 of the Complaint:

> On 5/20/13 Finkel Law Firm [the foreclosing firm] filed a letter with the Court, after the foreclosure had been dismissed, of a denial of foreclosure relief.  This is a sham statement.

Compl. ¶ 18.  As noted before, it is unclear what Plaintiffs' allegation is in this paragraph.  Such an allegation, along with speculative assertions of a conspiracy by Defendant to deny loan modifications in order to achieve a pecuniary benefit, is not sufficient to push Plaintiffs' claim of negligent misrepresentation from conceivable to plausible.  Therefore, Plaintiffs' claim for negligent misrepresentation fails to state a claim upon which relief can be granted.[7]

---

[7] Because the court finds dispositive the failure of Plaintiffs to allege that Defendant made a false representation to Plaintiffs, the court will not address the other requirements of stating a claim for negligent misrepresentation.

9

### D.  Unfair Trade Practices

Plaintiffs' claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") fails because Plaintiffs have not alleged an unfair or deceptive practice that affects the public interest. As a threshold matter, Plaintiffs seem to allege that the unfair or deceptive practice is Defendant's failure, as "mandated by the [Toal] Administrative Order, and other federal programs, to initiate in good faith a loan modification review program."  Compl. ¶ 30.  As discussed already, the Toal Administrative Order does not impose a duty on Defendant to provide a loan modification, and neither the Toal Administrative Order nor the "other federal programs" create a private cause of action for failure to provide a loan modification or meaningful process through which to petition Defendant for a loan modification.  Therefore, if the unfair or deceptive practice is Defendant's violation of the Toal Administrative Order and "other federal programs," there is no unfair or deceptive practice because there has been no actionable violation.

Plaintiffs also fail to establish that the alleged unfair or deceptive practice has an impact on the public interest.  "To be actionable under the [SC]UTPA, therefore, the unfair or deceptive act or practice in the conduct of trade or commerce must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 479, 351 S.E.2d 347, 350 (Ct. App. 1986).  Plaintiffs' allegation that "[t]he conduct [of defendant] affects the public interest, can be and has been repeated on other members of the borrowing public" is nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Compl. ¶ 33; *Ashcroft v. Iqbal*, 556 U.S. 662, 663

(2009) ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements").

Plaintiffs' claim pursuant to the SCUTPA, therefore, fails to state a claim upon which relief can be granted.

### E.  Detrimental Reliance

Because the court can locate no South Carolina law providing for detrimental reliance as a cause of action,[8] the court understands Plaintiffs' claim of detrimental reliance to be one of either promissory estoppel[9] or equitable estoppel.[10]  As to promissory estoppel, Plaintiffs do not allege the existence of an unambiguous promise upon which Plaintiffs relied and were thereby injured. As to equitable estoppel, Plaintiffs do not allege conduct amounting to a false representation by Defendant—just as with Plaintiff's negligent misrepresentation claim.  Instead, Plaintiffs seem to allege only that Defendant did not process Plaintiffs' request for a loan modification or provide a loan modification to Plaintiffs.  Plaintiffs' Complaint provides:

> The above described conduct constitutes detrimental reliance upon various statements and representations by [Defendant's] employees, causing Plaintiffs to incur greater debt and damages by their fair reliance upon the false and willful statements of WF.[11]

---

[8] Detrimental reliance is a crucial element in a claim for estoppel, not a cause of action.  *See Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.,* 368 S.C. 342, 359, 628 S.E.2d 902, 912 (Ct.App.2006) (indicating the lack of detrimental reliance is fatal to a claim of estoppel).

[9] In order to recover under a theory of promissory estoppel, a claimant must demonstrate: (1) the presence of a promise unambiguous in its terms; (2) reasonable reliance on the promise; (3) the reliance was expected and foreseeable; and (4) injury in reliance on the promise. *Craft v. S. Carolina Comm'n for Blind*, 385 S.C. 560, 565, 685 S.E.2d 625, 627 (Ct. App. 2009)

[10] "The essential elements of equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Boyd v. Bellsouth Tel. Tel. Co., Inc.,* 369 S.C. 410, 422, 633 S.E.2d 136, 142 (2006).

[11] The court assumes that "WF" stands for "Wells Fargo."  Wells Fargo is not a party to this action, but is mentioned in another portion of Plaintiffs' complaint.

Compl. ¶ 36.  Again, Plaintiffs' "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to articulate a plausible claim of detrimental reliance, promissory estoppel, or equitable estoppel.  Plaintiffs' detrimental reliance claim, therefore, fails to state a claim upon which relief can be granted.

## V.    CONCLUSION

Based on the foregoing, the court grants Defendant Bank of America, NA's motion to dismiss all of Plaintiffs' claims against Defendant Bank of America, NA *with prejudice*.  The court dismisses all of Plaintiffs' claims against Defendant John Doe Trust *without prejudice*.[12]


IT IS SO ORDERED.


September 10, 2013                         Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge

---

[12]Because this order dismisses Bank of America, NA—the only Defendant other than unknown Defendant John Doe Trust—further proceedings in this action are unlikely to reveal the identity of "John Doe Trust," and this court may, therefore, dismiss Defendant John Doe Trust without prejudice.  *See Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000) ("The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery. *See Roper v. Grayson,* 81 F.3d 124, 126 (10th Cir.1996); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." *Schiff,* 691 F.2d at 198 (footnote omitted); *see also Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985)").